UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEELY E. NIEPER,

        NO. CIV. S-08-2621 LKK/GGH

    Plaintiff,

  v.                              O R D E R

JIM CORSAUT, an individual;
CITY OF ISLETON, an entity
whose form is unknown; and
DOES 1 through 10,

    Defendants.
_____/

    Plaintiff, a woman employed as an administrative assistant by the defendant City of Isleton, brings this suit for sexual harassment, discrimination, retaliation and various other torts by Isleton City Councilmember Jim Corsaut. Plaintiff's complaint includes twelve causes of action, and names both Corsaut and the City of Isleton.

    Defendant City of Isleton moved to dismiss all twelve claims, but noted that the complaint was unclear as to whether all claims were actually alleged against the City. Plaintiff states that only

1

the fifth, sixth and seventh claims (under the California Fair Employment and Housing Act), the eighth, ninth and tenth claims (under Title VII), and the twelfth claim (for intentional infliction of emotional distress) are alleged against the city. Additionally, plaintiff has agreed to dismiss her sixth, ninth, and twelfth claims. As to the remaining claims, the City's motion to dismiss is denied.

## I. BACKGROUND[1]

Plaintiff is a woman employed as an administrative assistant by defendant City of Isleton, and was an employee at all times relevant to this suit. Defendant Corsaut was formerly mayor of the City, and at times relevant for this action, served as a member of its city council. Corsaut made unwelcome sexual comments, innuendos and jokes to plaintiff and other female staff members on a regular basis, for a period of time stretching from early 2007 through July 2007. Plaintiff and other women complained of this behavior to the City, but the City failed to stop the harassing behavior. Corsaut responded to these complaints by over-scrutinizing plaintiff's work and informing plaintiff that she was not needed and could be fired. Plaintiff complained of this additional behavior to the City, and the City failed to respond.

Beginning on July 24, 2007 and continuing in to August of that year, Corsaut sent faxes and letters to the City revealing a misdemeanor charge that had been brought against plaintiff but

---

[1] For purposes of this motion, allegations in plaintiff's complaint are taken as true.

2

1  dismissed. This correspondence identified plaintiff, and plaintiff
2  contends that it gave the impression that she was being accused of
3  thievery and/or embezzlement. On at least one occasion, this
4  information was posted at the local post office. Plaintiff alleges
5  that Corsaut made these statements with the intent to interfere
6  with her employment and in retaliation for plaintiff's complaints
7  of sexual harassment. Plaintiff further alleges that these
8  statements have harmed her future employment prospects.

9  Plaintiff has filed timely complaints with the California
10 Department of Fair Employment and Housing and with the Equal
11 Employment Opportunity Commission, thereby exhausting her
12 administrative remedies under the California Fair Employment and
13 Housing Act, Cal. Gov. Code § 12900 et seq., and Title VII, 42
14 U.S.C. § 2000e et seq..

## II. STANDARD

16  In order to survive a motion to dismiss for failure to state
17 a claim, plaintiffs must allege "enough facts to state a claim to
18 relief that is plausible on its face." Bell Atlantic Corp. v.
19 Twombly, 550 U.S. 544, 569 (2007). While a complaint need not
20 plead "detailed factual allegations," the factual allegations it
21 does include "must be enough to raise a right to relief above the
22 speculative level." Id. at 555.

23  The Supreme Court recently held that Federal Rule of Civil
24 Procedure 8(a)(2) requires a "showing" that the plaintiff is
25 entitled to relief, "rather than a blanket assertion" of
26 entitlement to relief. Id. at 555 n.3. Though such assertions may

provide a defendant with the requisite "fair notice" of the nature of a plaintiff's claim, the Court opined that only factual allegations can clarify the "grounds" on which that claim rests. Id. "The pleading must contain something more. . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. at 555, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d ed. 2004).[2]

On a motion to dismiss, the allegations of the complaint must be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. See Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). In general, the Complaint is construed favorably to the pleader. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). Nevertheless, the court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

### III. ANALYSIS

Plaintiff alleges that she suffered harassment,

---

[2] The holding in Twombly explicitly abrogates the well established holding in Conley v. Gibson that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957); Twombly, 550 U.S. at 560.

4

discrimination, and retaliation from Corsaut, and that as a result, the City is liable for Corsaut's behavior under both Title VII, 42 U.S.C. § 2000e et seq., and the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900 et seq. Although the City raises substantially similar challenges to both the Title VII and FEHA claims, the court discusses those claims separately. As to plaintiff's state tort claims, plaintiff stated that all but one of these claims was only intended against Corsaut, and plaintiff has agreed to dismiss the remaining claim.

**A.  Title VII Claims**

Plaintiff's Federal claims are rooted in two provisions of Title VII. The harassment claim (and the abandoned discrimination claim) are based on 42 U.S.C. § 2000e-2(a)(1), which provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." Such discrimination occurs when sex is a "motivating factor" for the employer's action. 42 U.S.C. § 2000e-2(m).

A separate provision, 42 U.S.C. § 2000e-3(a), prohibits retaliation. It is unlawful for an employer "to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title."

The City disputes whether plaintiff has properly alleged that Title VII applies to the City at all, and whether plaintiff has satisfied the requirements of either of these particular provisions.

### 1. Failure to Allege Enough Employees

The City first argues that plaintiff has not alleged that Title VII applies to the City at all. Title VII only imposes liability on "employers," which are defined to include governments and government agencies that "[have] fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, . . ." 42 U.S.C. § 2000e(b). This threshold requirement is not jurisdictional. Arbaugh v. Y & H Corp., 546 U.S. 500, 516 (2006).[3]

Plaintiff's complaint does not specifically allege that defendant has fifteen or more employees. Defendant argues that because of this omission, all Title VII claims must be dismissed. Plaintiff's opposition memorandum does allege that the city crosses the threshold, and states her willingness to file an amended complaint if necessary.

Defendants apparently misunderstand the requirements of federal notice pleading. Plaintiff's complaint adequately "gives [defendants] fair notice of the basis for [plaintiff's] claims."

---

[3] Although Arbaugh stated that the threshold requirement was "an element of plaintiff's claim for relief," it did so to juxtapose an element of a claim from an element of jurisdiction. As such, Arbaugh did not address whether the number of employees must be specifically pled.

6

1  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).  Although
2  the precise ramifications of Twombly on notice pleading
3  requirements are still being determined, this uncertainty is not
4  relevant here.  Twombly quoted from the following language in
5  Swierkiewicz, a Supreme Court opinion specifically addressing Title
6  VII.  Swierkiewicz held that a complaint was sufficient when

> [plaintiff] alleged that he had been terminated on account of his national origin in violation of Title VII . . . .  His complaint detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination.  These allegations give respondent fair notice of what [plaintiff's] claims are and the grounds upon which they rest.

Swierkiewicz, 534 U.S. at 514, aff'd by Twombly, 550 U.S. at 569. Accordingly, the instant allegations also provide "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  In this case, there is no confusion or uncertainty about the nature of plaintiff's claims, nor are they facially implausible.  The parties may conduct discovery regarding whether the city employs a sufficient number of employees, and dispute this point in a later motion.

**2.   Harassment under Title VII (Eighth Claim)**

Sexual harassment that creates a hostile work environment can constitute discrimination with respect to the terms, conditions, or privileges of employment. Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995) (citing 42 U.S.C. § 2000e-2(a)(1) and Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986)).  The

7

City argues that even if plaintiff has sufficiently alleged that Corsaut created a hostile work environment, the City cannot be liable for Corsaut's acts of harassment.

Two Supreme Court opinions, released on the same day, provide the framework for analyzing an employer's liability under Title VII for harassment by a supervisor.[4] Burlington Indus. v. Ellerth, 524 U.S. 742, 754 (1998), Faragher v. City of Boca Raton, 524 U.S. 775, 797 (1998).  The Court held that this framework must be premised on agency liability, because the only provision of Title VII that implies vicarious liability is 42 U.S.C. § 2000e(b), which defines "employer" to include an employer's agents.

Title VII incorporates a unique, uniform federal law of agency, and not "the law of any particular State." Ellerth, 524 U.S. at 754-55 (quoting Community for Creative Non-Violence v. Reid, 490 U.S. 730, 740 (1989)). As a starting point in discussing this law, the Court used the Restatement of Agency.[5] Id. at 755.

---

[4] The Ninth Circuit has also held that an employer may be liable for harassment by non-employees under a negligence theory. Freitag v. Ayers, 468 F.3d 528, 538 (9th Cir. 2006), Little v. Windermere Relocation, Inc., 301 F.3d 958, 968 (9th Cir. 2002), Folkerson v. Circus Circus Enters., Inc., 107 F.3d 754, 756 (9th Cir. 1997); see also 29 C.F.R. § 1604.11(e).  These cases may provide an alternative theory of liability in this case. However, because Corsaut is alleged to be a supervisor, even if he is not an employee, the court begins with the Ellerth/Faragher framework.

[5] Ellerth and Faragher relied on the Restatement (Second) of Agency (1958), which has been superceded by the Restatement (Third) of Agency (2006).  Because the Restatement (Second) formed the background against which Title VII was enacted, this court applies it here.  See also Ivan v. County of Middlesex, 2009 U.S. Dist. LEXIS 4147 (D.N.J. Jan. 21, 2009) (applying Ellerth/Faragher, using the Second, but noting that the Third did not differ in any relevant way).

8

However, the contours of "agency" under Title VII are ultimately a question of statutory interpretation, informed by Congress's intentions in enacting Title VII. Id. at 764. Evaluation of employer's liability for supervisors' acts "calls not for a mechanical application of indefinite and malleable factors set forth in the Restatement, see, e.g., §§ 219, 228, 229, but rather an enquiry into the reasons that would support a conclusion that harassing behavior ought to be held within the scope of a supervisor's employment, and the reasons for the opposite view." Faragher, 524 U.S. at 797.

Thus, vicarious liability presents two questions: whether Corsaut was an agent for the City, and if so, whether the City may be liable for his particular harassing acts. On the first question, notwithstanding the City's citations to state law, plaintiff has adequately alleged that Corsaut is an agent. Specifically, plaintiff has alleged that the City has given Corsaut authority to act on the City's behalf in managing plaintiff's working conditions and duties. Restatement (Second) of Agency § 1. Several other cases have held that cities may be liable under Title VII for harassment by elected city officials. Kelley v. City of Albuquerque, 542 F.3d 802 (10th Cir. 2008), Bandera v. City of Quincy, 344 F.3d 47, 49 (1st Cir. 2003).[6]

---

[6] Although the City notes that Corsaut, as an elected official, is excluded from the statutory definition of an employee, this exclusion is not relevant. Both Ellerth and Faragher relied on general agency principles, even though the supervisors in those cases were employees. An earlier Supreme Court decision, Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986), interpreted §

9

On the second question, Ellerth and Faragher held that "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." Ellerth, 524 U.S. at 765. In reaching this conclusion, the Court recognized that "[t]he general rule is that sexual harassment by a supervisor is not conduct within the scope" of agency relations,[7] but the Court nonetheless put the burden on the employer to show that vicarious liability should not attach. Id. at 757. When the supervisor's harassing act constituted a "tangible employment action," such as firing or denial of a raise, there is no way for the employer to escape liability, because such acts are "aided [by] the agency relation." Ellerth, 524 at 760-61 (citing Restatement (Second) of Agency § 219(2)(d)). On the other hand, absent a tangible employment action, the employer may raise an affirmative defense by showing "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Ellerth, 524 U.S. at 765.

---

2000e(b) as precluding reflexive application of respondeat superior liability. Thus, the only relevant question is whether Corsaut was an agent. Title VII refers to an individual's status as an employee only for purposes of determining whether that person is protected by Title VII.

[7] Although Ellerth used the term "scope of employment," its reasoning is not confined to employer/employee relationships.

10

The City argues that plaintiff's harassment claim is barred by this Ellerth/Faragher defense.  Plaintiff has not alleged that she suffered a "tangible employment action."  She has alleged, however, that "Defendant Isleton failed to ensure that Defendant Corsaut's harassing behavior would stop after Plaintiff and others notified Defendant Isleton of such harassing behavior." (FAC, 11:5-12.)  Thus, plaintiff's allegations, if true, imply that the city failed to exercise reasonable care in correcting sexually harassing behavior.

In response, the City argues that evidence properly before the court contradicts this allegation, and demonstrates that harassment ceased after the City was notified.  Specifically, the City requests judicial notice of plaintiff's administrative charges, which allege that the harassment began in early 2007 and ended on or around July 2, 2007.  Even if the court were to consider the allegations contained in these charges, the City's argument would fail.[8]  Nothing in the complaint indicates that the administrative charges were plaintiff's only act of notifying the City.  The complaint does not state this, and implies the contrary, in that it specifically alleges that there was a period of time (presumably prior to July 2, 2007) in which the City knew of the harassment but

---

[8] The court may take judicial notice of the fact that the administrative charges make these allegations, but not of their (purported) truth.  The mere fact that a plaintiff has made contradictory allegations in the past does not warrant dismissal under 12(b)(6).  Similarly, the complaint implicitly refers to these documents only for the fact of their existence, in establishing plaintiff's right to sue.

11

failed to adequately respond. At this stage, this is all that is necessary to state a Title VII harassment claim.

   **3.**  **Retaliation under Title VII (Plaintiff's Tenth Claim)**

   Plaintiff also claims that the City retaliated against her for complaining of sex discrimination. In response, the City argues that plaintiff has not alleged actionable retaliatory activity, and that the City cannot be held liable for any such activity performed by Corsaut.

   Under Title VII, a separate provision specifically prohibits retaliation, 42 U.S.C. § 2000e-3(a). This section provides that it is unlawful for an employer "to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title . . . ." Plaintiff has adequately alleged that she opposed an unlawful employment practice, and that this opposition motivated Corsaut's later actions.

   "Discriminate," as used by the anti-retaliation provision, carries a different meaning than it does in the employment-discrimination provision. Whereas section 2000e-2(a)(1) proscribes only discrimination "with respect to [an employee's] compensation, terms, conditions, or privileges of employment," section 2000e-3 contains no such restriction. <u>Burlington Northern & Santa Fe Railway Co. v. White</u>, 548 U.S. 53, 67 (2006). Because of this distinction, the Supreme Court recently overruled Ninth Circuit and other cases that had held that Title VII retaliation cases required a showing of an adverse employment action or adverse employment

12

decision. Id. at 61, 67 (citing and overruling Ray v. Henderson, 217 F.3d 1234, 1242-1243 (9th Cir. 2000)). "The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." Id. at 67. All that a plaintiff must show is "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (internal quotations omitted).

Corsaut's alleged defamation would be likely to deter a reasonable employee, and thus constitutes "discrimination" for purposes of 42 U.S.C. § 2000e-3. Indeed, the City does not dispute that the defamatory conduct could constitute a deterrent.

Instead, the City's only response to this claim is to argue that the defamation occurred outside the employment context (a fact that White states is irrelevant to whether the act constituted retaliatory discrimination under Title VII) and that the City cannot be held liable for Corsaut's acts. The court turns to this final argument now.

This court is not aware of any decision discussing a framework for vicarious liability for retaliatory acts analogous to the framework for harassment in Ellerth and Faragher. Moreover, it appears that the Ellerth framework cannot be applied to the retaliation context without vitiating White. As discussed above, Ellerth noted that under the Restatement, an employer is only liable for an agent's acts that occur within the scope of the

13

agency relationship or that fall within one of the four exceptions provided by Restatement (Second) of Agency § 219(2).[9] Retaliatory acts that are not employment-related will generally be outside both the scope of employment and these exceptions. Nonetheless, White makes these retaliatory acts actionable under Title VII. This must make employers vicariously liable for these acts, because Title VII does not impose liability upon any other party (i.e., Title VII does not make supervisors personally liable). Imposing vicarious liability in this situation goes beyond the Restatement, but as the Court noted in Faragher, the operative question is whether imposing liability would be consistent with the purposes of Title VII. Faragher, 524 U.S. at 797. The Court in White did not discuss vicarious liability, but adopting the position advocated by defendants would nullify the outcome commanded by the Court in that case. White compels the conclusion that the City may be liable for Corsaut's retaliatory acts.

**B.   Fair Employment and Housing Act Claims**

Plaintiff also brings harassment and retaliation claims under

---

[9] Restatement (Second) of Agency § 219(2) states that a master is liable for a servant's acts outside the scope of employment when:
    a) the master intended the conduct or the consequences, or
    b) the master was negligent or reckless, or
    c) the conduct violated a non-delegable duty of the master, or
    d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

14

California's Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900 et seq. Although FEHA and Title VII are similar, the court analyzes the FEHA claims separately. Richards v. CH2M Hill, Inc., 26 Cal. 4th 798, 812 (2001).

### 1. Harassment under FEHA

Unlike Title VII, FEHA explicitly prohibits "[h]arassment of an employee, an applicant, or a person providing services pursuant to a contract" on the basis of sex. § 12940(j)(1). This provision applies to harassment by employees and by nonemployees: "An employer may also be responsible for the acts of a nonemployee with respect to sexual harassment of employees . . . where the employer, or its agents or supervisors, knows or should have known of the conduct and failed to take immediate and appropriate corrective action." Id. "In reviewing cases involving the acts of nonemployees, the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of those nonemployees shall be considered." Id.

As discussed above, plaintiff has adequately alleged that the city failed to take "appropriate corrective action" once notified of the harassment. Additionally, plaintiff's allegations imply that the City had control over Corsaut's behavior, in that the City did ultimately stop the harassment. Therefore, plaintiff's harassment claim may proceed under FEHA regardless of whether Corsaut is an agent of the City. See also Carter v. Calif. Dept. of Veterans Affairs, 38 Cal.4th 914, 930-31 (2006).

////

### 2. Retaliation under FEHA

With respect to the retaliation claim, although FEHA's statutory language is similar to Title VII, the California Supreme Court's interpretation of FEHA differs from the United States Supreme Court's interpretation of Title VII in <u>White</u>, in that California holds that both retaliation and discrimination require a material adverse employment action.

Both FEHA and Title VII make it unlawful "to discriminate against [an employee] [in] compensation[,] terms, conditions, or privileges of employment" on the basis of sex. Cal. Gov. Code § 12940(a)(1), 42 U.S.C. § 2000e-2(a)(1). Similarly, both use similar language to prohibit retaliatory "discrimination" against individuals who have opposed discriminatory employment practices.[10] Cal. Gov. Code § 12940(h), 42 U.S.C. § 2000e-3(a). In <u>White</u>, as discussed above, the Supreme Court held that the word "discrimination" is limited to employment actions in the former provision, but not in the latter. <u>White</u>, 548 U.S. at 67. The California Supreme Court, however, had earlier held that "discrimination" encompasses the same types of acts in both FEHA provisions, such that FEHA only prohibits retaliation where "an

---

[10] FEHA makes it unlawful to "discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov. Code § 12940(h). The analogous provision in Title VII applies to "discriminat[ion] against any [person] . . . because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. 2000e-3(a).

16

employer's adverse action [] materially affect[s] the terms and conditions of employment." Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1036 (2005). This decision has not been revisited in light of White and that case's overruling of federal cases that required that retaliatory acts occur in an employment context. See McRae v. Department of Corrections & Rehabilitation, 142 Cal. App. 4th 377, 387 (2006) (noting that White overruled many of the decisions informing Yanowitz, but following Yanowitz).

Thus, to state a claim for retaliation under FEHA, plaintiff must identify a retaliatory adverse employment action.[11] Yanowitz, 36 Cal.4th at 1054. Pre-White Ninth Circuit cases that had held that conduct similar to that alleged here did not constitute an adverse employment action giving rise to a retaliation claim.[12] In one case, the Ninth Circuit held that mere scrutiny, without a false or undeserved performance review, cannot constitute an adverse employment action. Kortan v. California Youth Auth., 217

---

[11] Plaintiff selectively quotes from Yanowitz, arguing that the California Supreme Court held that an act could be retaliatory if it merely was "reasonably likely to adversely and materially affect an employee's job performance[,]" etc. Yanowitz, 36 Cal. 4th at 1054. The Court stated that the retaliation provision protects against "employment actions" that are likely to have this consequence. Id. Thus, the mere fact that the alleged defamation might have affected plaintiff's performance is not sufficient to support a retaliation claim.

[12] Prior to White, the Ninth Circuit had held that retaliation claims under Title VII required adverse employment actions, but that these actions did not need to be material. Ray v. Henderson, 217 F.3d 1234, 1242-1243 (9th Cir. 2000). Thus, the Ninth Circuit cases cited here applied a lower threshold than that imposed by Yanowitz. These cases are nonetheless informative on this issue: if an action is not an employment action at all, it cannot satisfy Yanowitz.

17

F.3d 1104, 1113 (9th Cir. 2000). The Ninth Circuit had also held that "badmouthing an employee outside the job reference context do[es] not constitute [an] adverse employment action[]." Brooks v. City of San Mateo, 229 F.3d 917, 928-29 (9th Cir. 2000) (citing Nunez v. City of Los Angeles, 147 F.3d 867, 875 (9th Cir. 1998)). Similarly, the Ninth Circuit held that unfulfilled "verbal[] threat[s]" were not an "employment action." Nunez, 147 F.3d at 875.

Accordingly, taken individually, none of the retaliatory acts alleged by plaintiff constitutes an adverse employment action, because none of the acts are themselves employment actions. However, Yanowitz specifically held that these acts may be considered collectively. Yanowitz, 36 Cal.4th at 1055 ("[T]here is no requirement that an employer's retaliatory acts constitute one swift blow, rather than a series of subtle, yet damaging, injuries."). Just as a hostile work environment may amount to an adverse employment action for purposes of a sex discrimination claim under Title VII (which has no separate prohibition on harassment), a hostile work environment may amount to an adverse employment action for a retaliation claim under FEHA. Id. at 1056 n.16. Plaintiff has alleged that these actions had this effect. On a motion to dismiss, the court cannot conclude that these specific acts did not amount to a cognizably hostile environment.

## IV. CONCLUSION

For the reasons stated above, the City's motion to dismiss claims brought against it is

1. GRANTED as to the first, second, third, fourth, sixth, ninth, eleventh and twelfth claims, in that plaintiff does not oppose dismissal;
4. DENIED as to the fifth and eighth claims, for harassment under FEHA and Title VII;
5. DENIED as to the seventh and tenth claim, for retaliation under Title VII.

IT IS SO ORDERED.

DATED: February 17, 2009.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT